STANDARD OIL COMPANY OF INDIANA, Respondent,
v. CALVET, et al, Appellants.

(227 N. W. 885.)

(File No. 6186. Opinion filed December 10, 1929.)

E. A. Berke, of Brookings, for Apellant.

Gardner & Churchill, of Huron, for Respondent.

POLLEY, J. This action was brought to recover $983.45 and interest on a promissory note executed by defendants. Defendant Calvet failed to answer or make any appearance in the case. Defendant Peterson answered by admitting the execution of the note, but as a defense alleged a total failure of consideration for the execution thereof.

The facts relative to the execution of the note are alleged to be as follows:

Defendant Calvet had been operating a garage in Elkton. He became indebted to plaintiff for gasoline and oil purchased from plaintiff to the extent of $983.45. In the month of March, 1922, two of plaintiff's agents, Cadwell and Van Dyke by name, went to Calvet and attempted to collect said sum of money. Calvet was unable to pay. The said agents then asked him to give plaintiff a note for the amount of the debt. Calvet assented to this request and gave to said agents the note involved in this action. Said agents then asked Calvet if defendant Peterson, who was Calvet's stepfather, and who, with his wife, was operating a hotel in Elkton, would sign the note also. Calvet said he did not know, but that they could ask him. All three parties then went to the hotel and asked Peterson to sign the note. This he refused to do, and a lengthy discussion over the matter took place. In regard to what transpired at that time Peterson testified as follows: "We had a talk at that time. Mr. Cadwell and Mr. Van Dyke came to my office and asked me if I would sign this note with my stepson which I would not do. After some time the same day I said that as long as you are going to check in another man why don't you give him a chance to work it out as your agent and one of them said that he was too young. We can't give it to him I mean Mr. Calvet, my stepson. One of them made me the proposition that if I would take the station and run it and have the responsibility of it he would give it to me if I would sign the note, which I finally agreed to and when I was signing the note I asked how will I be sure that I am going to get the station. Mr. Van Dyke said I and Mr. Cadwell both have authority enough to put in whoever we want to so we will see that you get the station. I would not have signed the note, plaintiff's Exhibit No. 1, if Cadwell and Van Dyke had not told me that. I never got the station at Elkton and they never checked me in at any time."

That this agreement as testified to by Peterson was made by Peterson and Cadwell and Van Dyke is not disputed, nor is it claimed by plaintiff that Peterson was to receive any consideration for signing the note other than the appointment as agent for plaintiff to have charge of and operate its oil station at Elkton. He never received such appointment, though at a later date another of plaintiff's agents offered him the oil station if he would pay $500 on the note. To this offer defendant replied as follows: "I said I was not in condition to do that as the promise was that I was to have the oil station and pay it off out of my earnings, about one-third of my earnings or more if I could."

At the conclusion of the testimony the trial court, on its own motion, gave the following among other instructions: "In this case the defendant, Peterson, has not shown any special damage resulting to him by reason of his failure to receive the appointment as operator of the oil station at Elkton, and if you find in his favor on this issue, you could only give him nominal dagames which would be a small sum, a nominal sum." And again after the jury had retired, and in the absence of and without the knowledge of defendant or his counsel, the trial court called the jury back and instructed them as follows: "Gentlemen of the Jury, the Court instructs you that if you find in favor of Peterson on account of his claim to have been appointed as operator of the station at Elkton, you can only assess nominal damages in his favor; that is, a small nominal sum, and this nominal sum should be deducted from the amount due on the note according to its terms and a verdict rendered in favor of plaintiff for the balance due." In response to these instructions the jury returned a verdict in favor of plaintiff for the sum of $800, evidently treating the difference between $800 and the amount of the note and interest as a nominal sum.

Defendant gave notice of intention to move for a new trial, secured a transcript, and on the 2d day of October, 1925, the trial court by order settled the record. On the 30th day of November, 1925, plaintiff moved for judgment for the full amount of the note and interest less a small nominal sum to be determined by the court. On the 6th day of January, 1926, the court made an order denying defendant's motion for a new trial and on the same day made an order granting plaintiff's motion for judgment and entered judgment for plaintiff for the full amount of the note and interest less

$10 allowed defendant as nominal damages. From this judgment and the order denying defendant a new trial, defendant appeals.

██ The two instructions above set out disclose the theory of the trial court, but neither of these instructions are in any manner germane to the issues in the case. Defendant did not ask for damages, either nominal or actual. He asked only to be relieved from the payment of the note because of a total lack of consideration. If the evidence of lack of consideration supports the allegations of his amended answer, he was entitled to a verdict, and whether the evidence was sufficient to support said allegations was a question for the jury.

Peterson contends that the sole consideration for signing the note was the appointment as plaintiff's agent to operate its oil station at Elkton. If this contention is sustained by the evidence, then by such appointment the consideration would have been complete, and by failing to make the appointment the failure of consideration was complete. But whether the promise of such appointment was the sole consideration for signing the note was an issue of fact that should have been submitted to the jury.

It is contended by the respondent that the errors committed by the court in the admission of evidence objected to by appellant and the giving of the instructions above set out were harmless, because the court entered judgment notwithstanding the verdict; but it was error for the court to enter the judgment it did. The only issue presented by the pleadings or the evidence is whether the promise to employ defendant as agent to operate plaintiff's oil station at Elkton is the only consideration for the execution of the note.

Upon this issue the jury found for the defendant. Section 1732, Rev. Code 1919, reads as follows: "Absence or failure of consideration is a matter of defense as against any person not a holder in due course, and partial failure * * * is an ascertained and liquidated amount or otherwise."

██ The case falls squarely with the rule announced in Independent Harvester Co. v. Anderson, 45 S. D. 60, 186 N. W. 112, 114, where this court said: "The rule that absence or failure of consideration for a written contract may be shown by parol is so elementary as to require no citation of authorities. That such a

defense may be interposed in an action upon a promissory note, as well as other written contracts, is made clear by our statute. Section 1732, R. C. 1919." See, also, Western Surety Co. v. Walter, 43 S. D. 38, 177 N. W. 804.

The judgment and order appealed from are reversed, and the case is remanded to the trial court for a retrial, with permission to appellant to so amend his answer so as to include the issue of damages if he so desires.

SHERWOOD, P. J., and BROWN, J., concur.

CAMPBELL and BURCH, JJ., concur in result.